Bullard, J.
The plaintiffs claim, as heirs of their mother, of the syndic of the creditors of their father, William Calmes, certain slaves which they assert were bequeathed to her by Drusilla Braselman, in the State of South Carolina. They allege, that the testatrix in her lifetime, lent to their mother, as well' as to her other children, a certain number of slaves which were afterwards given by will, and that a part of the slaves in question were received in that way, and with that understanding; and, that after her death their mother, one of the heirs and legatees, retained them as a part of her portion.
The defendants answer, that the slaves were legally sequestered ; that they became the property of the creditors of William Calmes, by his surrender and its acceptance by the Judge; and they deny the allegations in the petition. In a supplemental answer they deny, that Drusilla Braselman was ever in possession or owner of any of the slaves except Coleman, but aver that they were the property of the insolvent, William Calmes.
It appears that Calmes had resided with his family in the State of Mississippi, and afterwards removed to, and resides in Louisiana.
The clause in the will of Drusilla Braselman, which contains the alleged bequest, is as follows : “ I give and bequeath to my beloved daughter Sarah S. Calmes, wife of William Calmes, one-fifth part of all my estate, both real and personal, during her natural life, and afterwards to her children, the heirs of her body, forever.”
Two questions are presented by this case: First. Whether under this clause in the will,.Sarah S. Calmes took only a life estate, with remainder over to her children, who it appears were in esse at the opening of the will, or a fee simple according to the laws of South Carolina. In the latter case, they vested in the husband; in the former, they descended to the heirs of the legatee. Secondly. Whether, in point of fact, the slaves now claimed are the same thus intended to be bequeathed.
1. It is ingeniously argued by the counsel for the appellants, in an elaborate brief, that the rule in Shelley’s case is applicable *662 to the devise contained in this will, to wit, that when the ancestor by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either me-diately or immediately, to his heirs in fee or in tail, the word heirs is a word of limitation of the estate, and not a word of purchase.
The present is a devise of personal property to Mrs. Calmes, during her natural life, and afterwards to her children, the heirs of her body, forever. Now it is shown, that the children, who now claim were in being at the time of the devise ; and, we think the use of the word children, though not specifically named, may well be considered as qualifying the expression which follows, to wit, the heirs of her body. In the case of Christmas and wife v. Weston, (not yet published,) where the remainder-men were named, and were in esse, we held, that the devise was limited to a life estate in the first donee, and that the remainder vested at the same time with the particular estate. The present case appears to us to come within the principle recognized in Kent’s Commentaries, as applicable to a case in which the heirs are spoken of as now living, which would clearly indicate the intention of the donor to give only a life estate to the first devisee. 4 .Kent, 221.
Such we think, would be the construction in South Carolina, according to the principles settled by the highest courts in that State. 1 Bay, 453-480. 2 Bay, 471. 2 Hill, 328-453. 1 McCord,. 60. 1 Wott & McCord, 69.
II. The identity of the slaves is the next question. It appears, that only two slaves were received by Calmes, from the estate of Mrs. Braselman, to wit, Coleman and Ben. The others, it is alleged, were advanced or loaned by the testatrix to her daughter, and were, after her death, taken and considered as a part of her legacy. It is further conceded, that Calmes sold the slave Ben received from the estate, and with the proceeds of the sale, together with other moneys received by him from the estate of Mrs. Braselman, purchased Juliette, who has been recovered in this case. Such being the fact, it is obvious that the plaintiffs cannot recover Juliette. The title to her is in the father, although he appropriated perhaps the funds of the plaintiffs to purchase her. If she had died, it would have been at the risk of the father, who *663 owed them the value of the slave sold by him, and the money received for him from the estate.
Defendant, in a proceeding instituted in his own name, having caused certain slaves belonging to plaintiffs to be sequestered as the property of his debtor, an insolvent, subsequently qualified as syndic of the creditors of the latter, and in that capacity proceeded to advertise the slaves for sale. In an action by plaintiffs to arrest the sale, and for damages for the illegal sequestration : Held, that damages were properly allowed against the defendant individually.
Sheaf fe, for the plaintiffs.
The court in the opinion pronounced in this case, did not advert to the fact, that the sequestration which is the foundation of this action, was obtained by Carruth as a creditor, and not as syndic of the insolvent. The action is against Carruth individually. The petition states, by way of narration, and to identify the negroes, that they had been advertized for sale by him as syndic. Carruth cannot shield himself from personal responsibility, by alleging that he acted as syndic. 2 La. 201, 350. 6 La. 449. 2 Robinson, 346.
*663 The evidence as to the other slaves has been strenuously com-batted, and the credibility of some of the witnesses attacked. This was left to the jury, and the verdict upon that part of the case, is not so unsupported by evidence as to enable us to set it aside as clearly erroneous.
It appears, that one of the negro children by the name of Joe, found by the jury to be property of the plaintiffs, was omitted in the judgment, and we have been urged to amend the judgment in that respect, and make it conform to the verdict.
The jury gave damages to the amount of $1296, against the defendant Carruth, individually. This is complained of as erroneous.